**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Encon Arizona LLC, | No. CV-19-05364-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Kiewit Infrastructure West Company, et al., | |
| Defendants. | |

This case stems from a road construction project to upgrade freeway and surface road infrastructure in Las Vegas, Nevada. Defendant/Counterclaimant Kiewit Infrastructure West Company ("Kiewit") entered a contract with the Nevada Department of Transportation to act as the project's designer and builder. Kiewit subcontracted the design, fabrication, and delivery of precast concrete bridge girders to Plaintiff/Counterclaim-defendant Encon Arizona, LLC d/b/a TPAC. In this lawsuit, TPAC and Kiewit each accused the other of breaching the subcontract. Following a bench trial, the Court issued a mixed verdict. It found that the unpaid balance Kiewit owed to TPAC was $1,452,442.29, but that Kiewit was entitled to $766,368.08 in offsets, resulting in a net judgment for TPAC in the amount of $686,074.21. (Doc. 154 at 19.)

TPAC moved for an award of attorney fees and non-taxable costs pursuant to a mandatory fee-shifting provision in the subcontract. (Doc. 157.) Kiewit opposed the motion arguing that TPAC should not be deemed the prevailing party, and objecting to

certain of TPAC's requested fees and costs as unreasonable. (Doc. 159.) Kiewit also noticed an appeal of the Court's judgment. (Doc. 170.) Because disposition of the appeal could have materially impacted the prevailing party analysis, the Court exercised its discretion to deny TPAC's fee motion without prejudice to TPAC renewing the request, if appropriate, after resolution of the appeal. (Doc. 174.)

Kiewit eventually voluntarily dismissed its appeal. (Doc. 176.) Thereafter, TPAC renewed its fee motion (Doc. 177) and filed a supplemental motion seeking the attorney fees incurred on appeal (Doc. 178). Kiewit opposed both motions based on its prevailing party arguments (Docs. 179, 178) and separately filed a motion asking the Court to either appoint Kiewit the prevailing party or find that neither party prevailed (Doc. 183).

For reasons explained below, the Court finds that TPAC is the prevailing party and therefore denies Kiewit's motion and grants TPAC's renewed and supplemental motions for attorney fees and non-taxable costs.

## I.    Entitlement

The subcontract contains the following fee-shifting provision:

> In the event either party Institutes suit in court against the other party or against the surety of such party, in conjunction with any disputed matter arising under this Contract, the prevailing party shall be entitled to recover all costs, expenses and attorney fees.

(Doc. 40-2 at 5.) Under Arizona law, "[a] contractual provision for attorneys' fees will be enforced according to its terms." *Chase Bank of Ariz. v. Acosta*, 880 P.2d 1109, 1121 (Ariz. Ct. App. 1994). Thus, if TPAC is the prevailing party in this matter, the Court "lacks discretion to refuse to award fees under the contractual provision." *Id.*

Where, as here, the parties' contract does not define "prevailing party," the Court looks to Arizona cases addressing the definition of "successful party" in A.R.S. § 12-341.01(A). *See Panto v. Sines*, No. 1 CA-CV 23-0182, 2023 WL 8071845, at *2 (Ariz. Ct. App. Nov. 21, 2023). "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court[.]" *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1994).

- 2 -

"In cases involving various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner." *Ayala v. Olaiz*, 776 P.2d 807, 809 (Ariz. Ct. App. 1989); *see also Vortex Corp. v. Denkewicz*, 334 P.3d 734, 745 (Ariz. Ct. App. 2014) ("For cases involving claims and counterclaims in which both sides receive a favorable judgment in part, our supreme court has applied the 'net judgment' approach, by which the 'prevailing party' for attorneys' fees purposes is the party that, when both sides are awarded judgments, is awarded a greater amount than the other party."); *Suenos LLC v. Goldman*, 633 Fed. App'x 874, 879 (9th Cir. 2015) (noting that the net winner/judgment test applies "to cases involving competing claims or counterclaims"). However, "in a case involving multiple claims and varied success, the trial court may apply a 'percentage of success' or a 'totality of the litigation' test." *Berry v. 352 E. Virginia, LLC*, 261 P.3d 784, 788-89 (Ariz. Ct. App. 2011); *Murphy Farrell Dev., LLLP v. Sourant*, 272 P.3d 355, 365 (Ariz. Ct. App. 2012) ("when a case involves multiple claims and varied success and the net judgment rule is inapplicable, the trial court may use a percentage of success factor or a totality of the litigation rubric to determine which party prevailed") (cleaned up).

TPAC argues that the net judgment rule applies and that it is the prevailing party under that test. Kiewit argues that the Court should apply the totality of litigation rule, and that under that rule Kiewit should be deemed the prevailing party. Alternatively, Kiewit argues the Court should apply the percentage of success rule or find that no party prevailed.

The Court agrees with TPAC. This case falls squarely within the ordinary net judgment rule because it involved competing claims, counterclaims, and setoffs tried together. Under this rule, TPAC is the prevailing party because it "obtain[ed] judgment for an amount in excess of the setoff or counterclaim allowed." *Trollope v. Koerner*, 515 P.2d 340, 344 (Ariz. App. 1973).

In arguing against application of the net judgment rule, Kiewit tries to recast this case as one in which Kiewit participated purely in a defensive posture. Kiewit contends that it substantially succeeded in its defense against TPAC's breach of contract claim, and therefore the net judgment rule is inapplicable. *See Schwartz v. Farmers Ins. Co. of Ariz.*,

800 P.2d 20, 25 (Ariz. App. 1990) ("Farmers did not assert an independent claim and obtain an award, rather it successfully defended against Schwartz's bad faith claim. Thus, the net judgment rule is not applicable."). But this is revisionist history. Kiewit was not merely a defendant; it was a counterclaimant. This case is akin to *Ocean West Contractors, Inc. v. Halec Const. Co., Inc.*, 600 P.2d 1102 (Ariz. 1979), in which the Arizona Supreme Court affirmed a fee award in favor of the net judgment winner where a general and subcontractor brought competing breach of contract claims against each other on the same contract. Likewise, this case is "one action on the contract and a counterclaim on the same contract. The [C]ourt decided which party was damaged, the set-offs involved, and what was ultimately owed to which party." *Id.* at 1106. When the dust settled, TPAC emerged as the net winner, coming away with a favorable judgment of $686,074.21.

Kiewit suggests that, even under the net judgment rule, it should be deemed the prevailing party because it was awarded $766,368.08 in offsets, which is greater than the $686,074.21 netted by TPAC. This is a misapplication of the net judgment rule because it compares Kiewit's gross offset award against TPAC's net judgment. A proper application of the net judgment rule compares each party's gross awards to assess whether either party nets an excess judgment. *See Trollope*, 515 P.2d at 344 ("The appellants recovered $791.75 on their complaint, only a small percentage of the $6000-plus prayed for, while the appellees recovered 100% [o]f the $500 prayed for in their counterclaim. Judgment was entered in favor of appellants in the amount of the difference, namely $291.75. . . . We hold that since the appellants' recovery of $791.75 exceeded that of appellees' compulsory counterclaim recovery of $500, the 'net judgment' being in appellants' favor for $291.75, the trial court erred by not awarding the 'successful' appellants their costs."). Here, the Court determined that the gross unpaid balance owed to TPAC on the subcontract was $1,452,442.29, but that Kiewit was entitled to $766,368.08 in gross offsets, resulting in a net judgment for TPAC in the amount of $686,074.21.

For these reasons, the Court finds that TPAC is the prevailing party and entitled to an award of its reasonable fees, costs, and expenses pursuant to the subcontract's fee-

- 4 -

shifting provision.

## II.    Reasonableness

Where reasonable attorneys' fees are sought pursuant to a contractual provision, a fee award must be supported by proof of what is reasonable. *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931 (Ariz. Ct. App. 1983). "A fee award calculated by a lodestar method—multiplying a reasonable hourly rate by the number of hours expended—is presumptively reasonable." *Flood Control Dist. of Maricopa Cty. v. Paloma Inv. Ltd. P'ship*, 279 P.3d 1191, 1212 (Ariz. Ct. App. 2012).

> Once the prevailing party makes a prima facie case that the fees requested are reasonable, the burden shifts to the party opposing the fee request to establish that the amount requested is clearly excessive. If that party fails to make such a showing of unreasonableness, the prevailing party is entitled to full payment of the fees. If, however, the party opposing the award shows that the otherwise prima facie reasonable fee request is excessive, the court has discretion to reduce the fees to a reasonable level.

*Geller v. Lesk*, 285 P.3d 972, 976 (Ariz. Ct. App. 2012).

### A.  Hourly Rates

When analyzing the reasonableness of a requested fee award, the Court begins by determining the billing rate charged by the attorneys who worked on the case. *China Doll*, 673 P.2d at 931. "[I]n corporate and commercial litigation between feepaying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Id.* at 931-32. However, "upon the presentation of an opposing affidavit setting forth the reasons why the hourly billing rate is unreasonable, the court may utilize a lesser rate." *Id.* at 932.

Here, TPAC's task-based itemizations identify the hourly rates for all attorneys and paralegals who performed work in this matter. (Doc. 157-1 at 2-71.) Hudson Lambert Parrott, LLC ("HLP"), formerly Hudson Parrott Walker, LLC, billed at hourly rates of $225-$375 for partner time, $200-$275 for associate time, and $150-$185 for paralegal time. (Doc. 157-2 at 9.) Murphy Cordier Casale Axel, PLC ("MCCA") billed at hourly

rates of $395 and $425 for partner time, $195 for associate time, $125-$195 for Law Clerk time, and $95-$185 for paralegal time. (*Id.* at 25-26.) Kiewit raises no objections to the reasonableness of these hourly rates. The Court finds the rates charged by TPAC's counsel to be reasonable.

### B. Number of Hours Expended

Next, the Court must assess whether TPAC's attorneys billed a reasonable number of hours for appropriate tasks. A reasonable attorneys' fee award compensates only for those "item[s] of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *China Doll*, 673 P.2d at 932 (internal quotation and citation omitted). To that end, the party seeking a fee award must submit an affidavit indicating "the types of legal services provided, the date the service was provided, the attorney providing the service . . ., and the time spent providing the service." *Id.*; *see also* LRCiv 54.2(d)(3), (e). Once that party establishes its entitlement to fees and submits a sufficiently detailed affidavit, "the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286 (Ariz. Ct. App. 2007). The opposing party must "present specific objections to the reasonableness of the fees requested." *Id.* Generic assertions that the fees "are inflated and that much of counsel's work was unnecessary . . . are insufficient as a matter of law." *Id.* at 1285-86.

Here, TPAC has submitted such task-based itemizations. Kiewit has lodged "two main categories" of objections to the attorney fees: (1) "time entries concerning claims and issues where Kiewit succeed in full or to a greater extent than TPAC" and (2) "time entries that are objectionable due to being insufficiently described excessive, redundant, block-billed, or otherwise improper." (Doc. 159 at 11.) Kiewit also has lodged objections to TPAC's itemized costs. (*Id.* at 15-17.)

In the main, the Court overrules Kiewit's objections to time entries concerning issues, claims, arguments, or motions on which Kiewit believes it achieved relatively greater success. Ordinarily, "work on an unsuccessful claim cannot be deemed to have been

expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

> This rationale for discounting hours spent on unsuccessful claims does not apply, however, where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories. This is so because much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Thus, fees are appropriately excluded from the lodestar only when different claims for relief are not interconnected, that is, when the claims rest on different facts and legal theories.

*Bogan v. City of Boston*, 489 F.3d 417, 42-29 (1st Cir. 2007) (cleaned up, with internal quotations and citations omitted). "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440.

> [T]he general rule [is] that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims. . . . Just as time spent on losing claims can contribute to the success of other claims, time spent on a losing stage of litigation contributes to success because it constitutes a step toward victory.

*Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991) (citation omitted); *see also China Doll*, 673 P.2d at 933 ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories."). TPAC's claim, Kiewit's counterclaim, and the various arguments and theories advanced in support thereof arose from the same common core of facts and were based on related legal theories, making the type of apportionment proposed by Kiewit both impractical and inappropriate.

With that said, the Court sustains Kiewit's objections, summarized at Doc. 159-7, to $20,137.50 worth of attorney fees TPAC incurred for the preparation of a *Daubert* motion that it ultimately did not file. In its reply, TPAC fails to address how the 74.1 hours spent on this issue materially advanced its interests in this litigation. The Court will

discount these fees.

The Court also sustains Kiewit's objections, summarized at Doc 159-8, to $10,405.00 worth of attorney fees TPAC incurred in relation to its claims against Kiewit's bond surety. By stipulation of the parties, the bond sureties were excluded from the trial and resulting judgment. (Doc. 105 at 32; Doc. 166; Doc. 169.) In its reply, TPAC does not address Kiewit's objection or otherwise explain why these fees should properly be shifted to Kiewit. The Court will discount them.

Kiewit's remaining objections are to time entries it believes are unreasonable or described with insufficient detail. As observed by TPAC, these entries fall into six categories: (1) excessive work attributable to TPAC's decision to hire out-of-state counsel, (2) insufficient detail to assess billing, (3) clerical or administrative work, (4) block billing, (5) travel time, (6) multiple people billing for the same tasks, and (7) fees incurred TPAC incurred relating to the preparation of the fee application. Having carefully reviewed Kiewit's objections, the Court overrules them.

First, Kiewit admittedly has "no objection to TPAC's choice of counsel" (Doc. 159 at 14), and the Court finds no basis to discount fees incurred because of lead counsel being located out of state. Second, the Court finds TPAC's task-based itemized statements are sufficiently detailed. Third, Kiewit fails to identify any tasks that are properly considered clerical or administrative. TPAC's attorneys may properly bill for tasks such as reviewing, analyzing, and finalizing drafts and documents. Fourth, the Court does not find that TPAC's attorneys have engaged in improper block billing. The entries identified by Kiewit reflect closely related tasks performed over the span of several or more hours, not large blocks of time billed for disparate or varied tasks that could not logically be grouped together. Fifth, travel time may appropriately be included in a fee application. *See Modulus Global Inc. v. Quintzy FZE LLC*, No. CV-22-01457-PHX-GMS, 2025 WL 862123, at *4 (D. Ariz. Mar. 19, 2025). Sixth, Kiewit has not adequately supported its allegation that multiple people impermissibly billed for the same task. Some of these entries concern multiple attorneys attending trial, and Kiewit cites no authority for the proposition that

- 8 -

more than one attorney being present at trial necessarily translates to duplicative or redundant work. What's more, Kiewit does not identify the entries that it believes reflect the same tasks as those in its itemized objections. To the extent Kiewit invites the Court to review multiple years of TPAC's time records to determine which, if any, contain the same tasks as those Kiewit has highlighted on its own spreadsheets, the Court declines to do so, as it is Kiewit's burden to support its own objections. Finally, the Court does not find that the time spent preparing TPAC's fee application is excessive, given the duration of the case and the complexity of the issues involved in the fee application.

For these reasons, the Court will reduce TPAC's attorney fees by $30,542.50 but otherwise overrules Kiewit's objections.

### C. Objections to Costs

Kiewit raises three objections to TPAC's costs.

First, Kiewit argues that TPAC improperly seeks to recover $225,412.68 in expert witness fees as non-taxable costs under the subcontract's fee-shifting provision. (Doc. 159 at 15.) "Courts have discretion to award expert fees as non-taxable costs if such fees are *explicitly* allowed by the terms of a contract between the parties." *Industrial Park Center LLC v. Star Fisheries Inc.*, No. CV-22-01657-PHX-SRB, 2025 WL 2558545, at *25 (D. Ariz. Aug. 14, 2025) (emphasis added). For example, in *Keg Restaurants Arizona, Inc., v. Jones*, the Arizona Court of Appeals upheld an award of expert witness fees where the parties' contract specified that costs included "fees for consultants and professionals." 375 P.3d 1173, 1118 (Ariz. Ct. App. 2016).

Here, TPAC contends that the phrase the subcontract's reference to "all costs" and "expenses" sufficiently authorizes an award of expert witness fees. The Court is unpersuaded, however, that a general reference to "all costs" is sufficiently explicit to encompass expert witness fees. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (concluding that an award of witness costs is inappropriate "absent *explicit* statutory or contractual authorization" (emphasis added)); *Google Inc. v. Beneficial Innovations, Inc.*, Civil Action No. 2:11-cv-00229-JRG-RSP, 2014 WL 4227366, at *6

(E.D. Tex. Aug. 26, 2014) (finding reference contractual reference to "all other reasonable costs and expenses" to be insufficient). Indeed, the cases that TPAC relies on do not support its own position. TPAC cites to *CMS Mechanical Services, LLC v. PetSmart, Inc.*, but the fee-shifting provision in that case specified that "the prevailing Party shall be entitled to receive from the other Party its attorneys', *experts'*, investigation, and other related fees, costs, and expenses." No. CV-15-02040-PHX-NVW, 2018 WL 2446483, at *2 (D. Ariz. May 31, 2018) (emphasis added). TPAC also cites *Allied Waste North America, Inc. v. ITS Enterprises, Inc.*, but the fee-shifting provision in that case specified that the prevailing party is entitled to "reasonable attorneys' *and expert witness* fees[.]" No. CV 07-1596-PHX-MHM, 2009 WL 3872337, at *3 n.1 (D. Ariz. Nov. 18, 2009). Finally, TPAC cites *Ajman Stud v. Cains*, No. CV-15-01045-PHX-DJH, 2020 WL 5034219 (D. Ariz. July 21, 2020), but that case involved fee-shifting under A.R.S. § 12-341.01, not under a contractual fee-shifting provision, and it appears the non-prevailing party objected only to the reasonableness of the expert witness fees, not to the prevailing party's entitlement to them. Based on the authorities cited by the parties, the Court is skeptical that a generic reference to "all costs" and "expenses" is sufficiently explicit to cover expert witness fees and therefore will sustain Kiewit's objection.

Next, Kiewit argues that TPAC's $131,630 for e-discovery related document hosting should not be awardable as costs. (Doc. 159 at 16.) Kiewit candidly admits that it is "aware of no case law" holding that e-discovery services are not awardable absent a cost-shifting provision more specific than "all costs." This objection, accordingly, is overruled.

Lastly, Kiewit objects to certain of TPAC's travel expenses. The Court sustains this object in part. The fee-shifting provisions' reference to "all . . . expenses" is broad enough to include TPAC's attorneys' travel and lodging expenses. But the Court agrees with Kiewit that TPAC's payment of $6,081.60 for a meeting room at the Hyatt Place hotel during the trial in this matter was unreasonable given the presumed availability of a meeting space at local counsel's office. TPAC fails to offer any specific defense of this expense in its reply brief.

For these reasons, the Court will reduce TPAC's non-taxable costs by $231,494.28.

**D. Supplemental Fees**

Finally, TPAC requests that the Court award it $7,200 for attorney fees incurred on appeal. (Doc. 178.) TPAC provides the Court with a task-based itemization of those fees. (*Id.* at 6.) Kiewit raises no objections to the reasonableness of those fees. It argues only that TPAC should not be deemed the prevailing party (Doc. 179), an argument the Court has rejected. Accordingly, the Court will award TPAC these fees.

**IT IS ORDERED** that Kiewit's motion asking the Court to appoint it as the prevailing party (Doc. 183) is **DENIED**.

**IT IS FURTHER ORDERED** that TPAC's renewed (Doc. 177) and supplemental (Doc. 178) motions for attorney fees and costs are **GRANTED** as follows:

1. TPAC is awarded reasonable attorney fees in the amount of **$580,535.22**.

2. TPAC is awarded non-taxable costs and expenses in the amount of **$155,696.47**.

Dated this 31st day of March, 2026.

Douglas L. Rayes
Senior United States District Judge